IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WESLEY TRIPLETT, | CASE NO. 4:20CV300-CAB |
| Petitioner, | JUDGE CHRISTOPHER A. BOYKO |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN DOUGLAS FENDER, [1] | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

On February 11, 2020, Wesley Triplett, a prisoner in state custody, filed through counsel a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On May 7, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation (non-document entry of May 7, 2020), and was reassigned to me on May 20, 2021, pursuant to General Order 2021-06 (non-document entry of May 20, 2021). Respondent Wanza Jackson-Mitchell, in her official capacity as Warden of the Warren Correctional Institution in Lebanon, Ohio, filed a Return of Writ (ECF # 9) on August 10, 2020.

---

[1] After Mr. Triplett filed his petition, he was transferred to the Warren Correctional Institution. Wanza Jackson-Mitchell is the warden of that institution and is the proper party Respondent. For the sake of convenience, in the balance of this Report and Recommendation, I refer to the Respondent as "the State."

1

Mr. Triplett did not file a Traverse. The District Court has jurisdiction over the Petition under § 2254(a).

For the reasons discussed below, I recommend the District Court **DISMISS** Mr. Triplett's Petition. I further recommend the District Court **DENY** Mr. Triplett's request for an evidentiary hearing and deny him a certificate of appealability (COA).

## FACTUAL BACKGROUND

For purposes of habeas corpus review, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. Mr. Triplett has not challenged the state court's factual findings as erroneous.

In its opinion affirming the trial court's judgment, the Ohio Seventh District Court of Appeals summarized the facts underlying Mr. Triplett's appeal as follows:

> {¶2} On May 25, 2017, Appellant was indicted on four counts for injuries suffered by his four-year-old son occurring between December 6, 2016 and April 5, 2017. The first count in the indictment charged Appellant with domestic violence for knowingly causing or attempting to cause physical harm to a family or household member, a felony of the third degree due to two prior domestic violence convictions. See R.C. 2919.25(A),(D)(4). In counts two through four, Appellant was charged with child endangering for recklessly abusing a child under 18, a felony of the second degree where there was serious physical harm. *See* R.C. 2919.22(B)(1),(E)(2)(d).

> {¶3} At the August 2017 jury trial, an intake caseworker from Children Services Board (CSB) testified she opened a case upon receiving a phone call on March 28, 2017. She went to Appellant's house and informed him of the report she received about his son. She testified Appellant "responded by stating that he did not harm his child, that his child had no injuries to him, that his child had no bruises." (Tr. 104).

2

He stated the child was not present, and he would not provide the mother's last name, phone number, or address.

{¶4} The caseworker contacted the Child Support Enforcement Agency (CSEA) to determine whether paternity had been established. From CSEA, she learned the child's full name, the child's date of birth, the mother's name, and the mother's last known address. She also confirmed the father's name and last known address. It was then learned the mother did not reside at the initial address provided by CSEA. The next day, CSEA provided the CSB caseworker with a more recent address which turned out to be the address of the child's maternal grandmother. The mother was no longer staying there or at an aunt's house where she sometimes stayed.

{¶5} The caseworker returned to Appellant's residence. Appellant insisted his son was fine and had no injuries on him. As to visitation, he reported the mother would drop the child off for a few days at a time and then randomly return to retrieve the child. The weekend passed with no contact from the mother. The caseworker received a concerning phone call from the child's uncle. The caseworker then asked the prosecutor and law enforcement for help finding the mother's place of employment. A phone number was procured for the mother who returned the caseworker's call and transported the child to the agency on April 5, 2017, more than a week after the initial report was received.

{¶6} The caseworker testified the four-year-old child was covered in marks evidencing injuries. A large burn covered (and extended beyond) the child's left elbow area. The child was African-American, and this burned area with defined borders was scarred pink as it had lost pigmentation. In addition, the child held his right arm protectively against his body and could not straighten it; the child's left bicep appeared significantly smaller than the muscle of the other arm. The caseworker noticed faded marks on the child's arms, hands, and face (some extending into the hairline). She then observed fresher "lashes all across his back, crisscross, gaps where his skin was broken." The child's buttocks and both legs showed the same "cord like slash marks."

{¶7} The caseworker via a deputy sheriff took emergency custody of the child and brought the child to the emergency room at the local campus of Akron Children's Hospital. From x-rays, it was discovered that the child suffered two broken bones in the elbow area, at the end of the upper arm bone and at the end of one of the bones of the forearm (ulna). Further, the child suffered three fractured ribs. An emergency room physician testified to discovering the bone injuries, along with the burn and scars on his back; his report containing the child's medical chart and photographs taken in the emergency room were admitted into evidence. The photographs showed multiple whip scars across the back of the child's body; there were clear imprints of loops showing a cord-like object was doubled-up during the lashing. The physician concluded to a reasonable degree of medical certainty that the child's injuries were the result of non-accidental trauma due to physical abuse. The child was referred to

a pediatric orthopedist and a burn specialist at the main campus of Akron Children's Hospital in Akron.

{¶8} The child's mother testified she became friends with Appellant after meeting him in 2011 and they had a brief sexual relationship from which she became pregnant. She advised Appellant of her pregnancy and moved away from the area. She returned to the area in 2016. In December 2016, Appellant contacted her about visiting with his child; she went to his residence in Youngstown with the child at first and soon permitted the child to stay overnight. She said Appellant had the child with him every day in January.

{¶9} The mother testified she first noticed injuries in February 2017, as the child was exiting the shower while she was at Appellant's house to retrieve the child. She saw whip lashes on his back, which she described as healing and not fresh. When she questioned Appellant, he admitted he "whooped" the child. She told Appellant he could not put his hands on the child and should use time-out as punishment.

{¶10} On another occasion, Appellant told the mother over the phone that the child had a sprained arm. When she asked him to take the child for medical treatment, Appellant refused and said he could take care of a sprained arm. At the beginning of March, she arrived to pick up the child from Appellant's house. When Appellant unwrapped the child's injured arm, the mother saw the arm was now burned. She testified Appellant said he burned the child in the shower (by putting him in the water without testing it). She explained her reason for deciding not to take the child for medical treatment: "I was scared. I didn't want them to – you know, on top of it, it was old. It was already pink. The skin was peeled back. I didn't want them looking at me like I was the reason for it due to the fact that it was old, so."

{¶11} The mother said she was upset and started going with her son to Appellant's house. She described the child as well-behaved and said she never had to spank him. She attested that she did not cause the burn, whip marks, broken ribs, or broken elbow and the child was never injured until Appellant entered his life. The caseworker pointed out there were no marks on the mother's two-year-old daughter (who had a different father), while the subject child was covered in evidence of injuries.

{¶12} A police officer testified he got a search warrant for Appellant's residence to look for items fitting the child's statement that a cord was used to make the whip marks on his body. The officer seized three black cords and a jump rope from Appellant's residence. The items and photographs of the items in situ were admitted as evidence. When the officer presented numbered photographs of the cords to the child, the child identified a photograph of a particular black cord. The officer then presented the cords to the child, and the child identified the same black cord. Relevant to the specification for the domestic violence charge, evidence of Appellant's two prior domestic violence convictions was presented.

{¶13} On April 18, 2017, the child was examined by a nurse practitioner at Akron Children's Hospital, Child Advocacy Center, after his medical records were reviewed. In preparing to examine the child, the nurse practitioner listened as the four-year-old child disclosed physical abuse by his father. The child said his father would strike his unclothed back with a cord as a form of discipline which caused pain; he also said his arm was burned when his father turned the water on while he was in the bathtub. The nurse practitioner outlined the child's injuries: broken bones (two fractured arm bones at the elbow and three fractured ribs); a burned elbow; and whip scars on the back, legs, buttocks, and arm.

{¶14} Photographs were introduced showing the appearance of the child's injuries two weeks after the emergency room visit. The nurse practitioner opined these were permanent scars. She confirmed the looped scars on the back of the child's body were consistent with being beaten with a cord. She also observed a scar near the child's mouth. She noted the burn scar around the elbow area had fairly smooth edges with no splash or flow marks as typically occurs when a child accidentally burns himself by spilling hot liquid. The child's broken bones were healing at the time of her examination, but there was some concern with a reduced range of motion in the elbow.

{¶15} The jury returned verdicts finding Appellant guilty as charged. The court sentenced Appellant to thirty-six months for domestic violence and eight years for each child endangering count to run consecutively. Appellant filed a timely notice of appeal from the August 30, 2017 sentencing entry.

(State Court Record, ECF #9-1, PageID 2010-14 (internal citations omitted); *see also State v. Triplett*,

No. 17 MA 0128, 2018 WL 6930504 *1-3 (Ohio Ct. App. Dec. 21, 2018), *appeal not allowed*, 119

N.E.3d 434 (Ohio 2019) (table)).

## PROCEDURAL HISTORY

## I.    State Conviction

On May 25, 2017, the Mahoning County Grand Jury indicted Mr. Triplett on one count

of domestic violence in violation of Ohio Revised Code § 2919.25(A) and three counts of child

endangering in violation of Ohio Revised Code §§ 2919.22(B)(1) and (E)(2)(d). (ECF #9-1, PageID

132-33). Mr. Triplett pled not guilty to all charges. (*Id.* at PageID 134). At trial, a jury convicted on

all counts as charged in the indictment. (*Id.* at PageID 135). On August 30, 2017, the trial court

sentenced Mr. Triplett to 3 years for domestic violence and 8 years for each count of child

endangering, all to be served consecutively, for a total of 27 years in prison. (*Id.* at PageID 136-39).

## II.     Direct Appeal

On September 8, 2017, Mr. Triplett, through counsel, filed a timely notice of appeal to the

Seventh District. (*Id.* at PageID 140). In his brief on the merits, Mr. Triplett raised the following

eight assignments of error:

I.     Appellant was denied due process of law and a fair trial, as guaranteed under both the Ohio and United States Constitutions, and the convictions as to all counts were based on insufficient evidence, when the trial court failed to include an instruction that the jury must find that all of the complained of conduct fell outside the realm of reasonable parental discipline.

II.    The conviction for Domestic Violence as contained in Count 1 of the indictment was based on insufficient evidence as the State filed to prove that Appellant was a family or household member relative to the alleged victim.

III.   Appellant was denied due process of law and a fair trial as guaranteed under both the Ohio and United States Constitutions, when the trial court allowed, and the State argued for a definition of reasonable parental discipline that was based on medical standards that are in conflict with the legal standards of the State.

IV.    Trial counsel was ineffective for failing to object to trial testimony and State's argument as to reasonable parental discipline when such argument was violative of Ohio legal standards, and rather based on a medical standard.

V.     Appellant was denied due process of law pursuant to both the United States and Ohio Constitutions as there is no way to know that the jurors who convicted him reached a unanimous verdict as to each and every act because the acts in this case, relative to child endangering were not delineated.

VI.    Appellant was denied due process of law pursuant to both the United States and Ohio constitutions had his right to protection against double jeopardy violated and was further deprived his rights pursuant to Article I, Section 10 of the Ohio Constitution as the State failed to distinguish the alleged crimes through indictment, and/or the bill of particulars.

VII.   The trial court allowed, over trial counsel's objection, the inadmissible hearsay testimony of J.C. prejudicing Appellant and denying him a fair trial.

VIII. Appellant was denied his right to effective representations as guaranteed by both the Ohio and United State constitutions as a result of trial court's failure to object to inadmissible hearsay from Sergeant Smith.

(ECF #9-1, PageID 146) (cleaned up). The State filed a brief in response. (*Id.* at PageID 164). On December 21, 2018, the Court of Appeals overruled all assignments of error and affirmed the judgment of the trial court. (*Id.* at PageID 209-44).

On February 4, 2019, Mr. Triplett, *pro se,* filed a timely notice of appeal to the Ohio Supreme Court. (*Id.* at PageID 245-46). Mr. Triplett's Memorandum in Support of Jurisdiction alleged eight propositions of law, identical to the eight assignments of error raised with the Seventh District. (*Id.* at PageID 248-49). The State filed a Waiver of Memorandum in Response. (*Id.* at PageID 303). On March 20, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Rule 7.08(B)(4) of the Ohio Supreme Court Rules of Practice. (*Id.* at PageID 304).

## III.  Federal Habeas Corpus Petition[2]

On February 5, 2020, Mr. Triplett filed his petition for writ of federal habeas corpus, raising the following eight grounds for relief:

**GROUND ONE:** Appellant was denied due process of law and a fair trial, as guaranteed under both the Ohio and United States Constitutions, and the convictions as to all counts were based on insufficient evidence, when the trial court failed to include an instruction that the jury must find that all the complained about conduct fell outside the realm of reasonable parental discipline.

**GROUND TWO:** The conviction for Domestic Violence as contained in Count 1 of the indictment was based on [*sic*] to prove that Appellant was a family member relative to the alleged victim.

---

[2]    The State confirms Mr. Triplett timely filed his petition in accordance with the applicable one year limitations period. *See* 28 U.S.C. § 2244(d). (ECF #9, PageID 67).

**GROUND THREE:** Appellant was denied due process of law and a fair trial as guaranteed under both the Ohio and United States Constitution, when the trial court allowed, and the State argued for a definition of reasonable parental discipline that was based on medical standards that are in conflict with the legal standards of the State.

**GROUND FOUR:** Trial Counsel was ineffective for failing to object to trial testimony and State's argument as to reasonable parental discipline when such argument was violative of Ohio legal standards, and rather based on a medical standard.

**GROUND FIVE:** Appellant was denied due process of law pursuant to both the United States Constitution and Ohio Constitution as there is no way to know that the jurors who convicted him reached a unanimous verdict as to each and every act because the acts in this case, relative to child endangering were not delineated.

**GROUND SIX:** Petitioner was denied due process of law pursuant to both the United States Constitution and Ohio Constitution, his Right to protection against double jeopardy was violated; and was further deprived of his right pursuant to Article I, Section 10 of the Ohio Constitution as the State failed to distinguish between the alleged crimes through indictment, and/or the Bill of Particulars.

**GROUND SEVEN:** The trial court allowed, over trial counsel's objection, the inadmissible hearsay testimony of J.C. prejudicing Petitioner and denying him the right to a fair and impartial trial.

**GROUND EIGHT:** Triplett was denied his right to effective representation as guaranteed by both the Ohio and United States Constitutions as a result of trial counsel's failure to object to inadmissible hearsay from Sergeant Smith.

(ECF #1). Mr. Triplett requests that his petition be granted or that this court hold an evidentiary

hearing. (*Id.* at PageID 39).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr.

Triplett's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The

AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights"

and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have

been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the

Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams,* at 407. The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt,* 571 U.S. at 18.

Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state law and state procedural law.

*Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982). Federal courts must accept a state court's interpretation of its statutes and its rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03. To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001).

**Exhaustion of Available State Court Remedies.** A court may not grant a petition for habeas corpus unless it appears that the petitioner has exhausted available state court remedies, there is an absence of available state corrective process, or circumstances exist that render such state process ineffective to protect the rights of the petitioner. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in which the petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly

presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default, discussed more fully below, rather than exhaustion applies. *Id.*

**Procedural Default.** There are two avenues by which a petitioner's claim may be procedurally defaulted. *Id.* First, procedural default of a claim occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted by the petitioner failing to raise it in state court and pursue that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time

of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*

The Supreme Court has stated that "in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas corpus review of a claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 749 (1991). A fundamental miscarriage of justice results from the conviction of one who is "actually innocent." *Murray,* 477 U.S. at 496.

A showing of cause requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation marks omitted)). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

13

Ineffective assistance of counsel may serve as cause to excuse a procedural default, but the ineffective assistance claim itself must not be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Attorney neglect, ignorance, or inadvertence, however, does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient under the test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Coleman v. Thompson*, 501 U.S. 722, 752-755 (1991); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A "fundamental miscarriage of justice" occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A valid actual innocence claim must be supported by new evidence not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Id.* at 315. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

### DISCUSSION

Rather than address the AEDPA standard, Mr. Triplett simply recites arguments presented in his state court appellate brief. He asserts no additional arguments than those presented in the state courts. The State asserts Mr. Triplett procedurally defaulted the portion of Ground One challenging the jury instruction on parental discipline, and Grounds Three and Five by not fairly presenting them to the Ohio courts at the first opportunity during trial proceedings. (ECF #9, PageID 70). In addition, the State argues the same portion of Ground One is a non-cognizable

challenge to a matter of state law, as are the claims in Grounds Three, Five, Six, and Seven.

(PageID 77, 90, 101, 110, 114). Otherwise, the State argues Mr. Triplett's claims are meritless.

I.      **Applying Procedural Default**

In Ground One, Mr. Triplett asserts, *inter alia,* the trial court erred when it did not instruct

the jurors on "reasonable parental discipline." The State claims Mr. Triplett procedurally defaulted

this portion of his claim when he failed to object contemporaneously to the alleged error at trial

and the Seventh District reviewed the issue for plain error only. (ECF #9, PageID 71). Mr. Triplett

offered minimal argument in his memorandum supporting the petition, stating his claims were

not procedurally defaulted because he "presents his claims in a timely manner that falls within the

guidelines of a timely filed petition[.]" (ECF 1-1, PageID 26). Based on the following, I conclude

Mr. Triplett has procedurally defaulted the portion of Ground One that relates to the asserted jury

instruction error, and therefore recommend the district court dismiss this portion of the claim as

procedurally defaulted.

Ohio has a long-standing and consistently enforced contemporaneous objection rule

prohibiting review of a claim that was not objected to at trial. *State v. Murphy*, 747 N.E.2d 765, 788

(2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial

error in order to preserve that error for appellate review. The rule is of long standing, and it goes

to the heart of an adversary system of justice."). The contemporaneous objection rule relating to

jury instructions is contained in Rule 30 of the Ohio Rules of Criminal Procedure, which states

that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions

unless the party objects before the jury retires to consider its verdict, stating specifically the matter

objected to and the grounds for objection." Ohio R. Crim. P. 30(A). Mr. Triplett did not ask for

an instruction on reasonable parental discipline, nor did he object to the final jury instructions before the case was submitted to the jury for deliberation, a fact the Seventh District noted in its judgment affirming Mr. Triplett's convictions. (ECF #9-1, PageID 277; *see also Triplett*, 2018 WL 6930504 at *7). This satisfies the first prong of the *Maupin* analysis.

The question thus becomes whether the state court enforced the procedural rule. The State argues the Seventh District did so when it analyzed the claim for plain error and found none. (ECF #9 at PageID 71-72). Courts in the Sixth Circuit have determined that an Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *See, e.g.,* *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002). A state appellate court's review under plain error analysis is not equivalent to a review on the merits. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). Here, the Court of Appeals explicitly invoked the plain error analysis and found none, thus enforcing the procedural rule and satisfying *Maupin's* second prong. (ECF #9-1, PageID 219-20; *Triplett*, 2018 WL 6930504 at *7-8).

The third prong of the *Maupin* analysis is satisfied because the contemporaneous objection rule has long been established as an adequate and independent state ground to bar federal habeas review. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("Ohio's contemporaneous objection rule constitutes an adequate and independent state law ground that bars federal habeas review absent a showing of cause and prejudice.").

Mr. Triplett does not make any argument as to cause and prejudice to overcome the procedural default. In addition, Mr. Triplett has not established that a fundamental miscarriage of

justice will occur if the district court declines to review his petition on the merits. He does not assert a valid claim of actual innocence supported by any new evidence not presented at trial. *See Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). I recommend the district court dismiss this portion of Ground One as procedurally barred.

The *Maupin* analysis applies similarly to Ground Three because Mr. Triplett did not contemporaneously object at trial to the nurse's testimony about the American Academy of Pediatrics recommendation regarding appropriate physical discipline or the state's recap of the nurse's testimony in closing argument, and the Seventh District explicitly invoked and reviewed the issues under the plain error standard. (ECF #9-1 at PageID 225-27). As in Ground One, the Seventh District's review for plain error is an enforcement of the procedural contemporaneous objection rule.

Although Mr. Triplett asserts an ineffective assistance of counsel claim in Ground Four grounded in counsel's failure to object based on the claimed errors in Ground Three, he has not asserted any argument that the ineffective assistance of counsel claim constitutes sufficient cause to overcome the procedural default. Mr. Triplett's conclusory statement at the outset of his memorandum in support of his petition—that his claims are not procedurally defaulted—is not adequately developed. Accordingly, Mr. Triplett has waived any claim that Ground Four (the ineffective assistance of counsel claim) is sufficient cause to overcome the procedural default of his claim in Ground Three. *McPherson v. Kelsey,* 125 F.3d 989, 996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

17

waived."). As above, Mr. Triplett has not established that a fundamental miscarriage of justice will occur if the district court declines to review this claim on the merits because he does not assert a valid claim of actual innocence supported by any new evidence not presented at trial. I recommend the district court dismiss Ground Three as procedurally defaulted.

The State further argues that Ground Five is procedurally defaulted because, as in Grounds One and Three, Mr. Triplett did not contemporaneously object at trial relative to jury unanimity on the three child endangering counts and the Seventh District invoked plain error review. (ECF #9, PageID 73; *see also* ECF #9-1 at PageID 231). The appellate court did review for plain error, thus enforcing its state procedural rule, an independent and adequate state ground on which to deny review of the claim. As above, Mr. Triplett has not made any argument as to cause and prejudice sufficient to overcome procedural default, nor has he established that failure to review this claim on the merits will constitute a miscarriage of justice. Therefore, Ground Five is procedurally defaulted and I recommend the district court dismiss it as such.

I now turn to review on the merits of the remaining Grounds for Relief.

## II.     Ground One

Though the portion of Ground One related to jury instructions is procedurally defaulted, Mr. Triplett also challenges the sufficiency of the evidence as to all four counts, claiming the State failed to demonstrate his actions towards the child did not constitute "reasonable parental discipline." The Seventh District reviewed the sufficiency of the evidence and jury instruction claim as follows:

> {¶17} Appellant contends the state had the burden to prove the child's injuries were outside the realm of reasonable parental discipline and the court was required to instruct the jury accordingly. Within this assignment of error, Appellant's sufficiency of the evidence argument is blended with a jury instruction argument. Nevertheless,

sufficiency is a different question than the question of whether a more specific jury instruction on the injury should have been provided. As Appellant points out, where there is insufficient evidence to support a conviction, a retrial is barred as jeopardy attached. However, the remedy for a lacking jury instruction would be to remand for a new trial. Thus, we address the issue as to whether a jury instruction was mandated after we address the issue of whether there was sufficient evidence.

{¶18} Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. An evaluation of witness credibility is not involved in a sufficiency review as the question is whether the evidence is sufficient if believed. A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines, after viewing the evidence in favor of the prosecution, that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. The evidence and all rational inferences are evaluated in the light most favorable to the state.

{¶19} The elements of domestic violence relevant to this case are: knowingly cause or attempt to cause physical harm to a family or household member. The elements of child endangering pertinent here are: recklessly abuse a child resulting in serious physical harm.

{¶20} Appellant asserts the state had the burden to prove the lack of reasonable parental disciple. He characterizes unreasonable parental discipline as an additional element of domestic violence when the defendant is a parent, citing to a parent's right to discipline his or her child and to the Supreme Court's *Suchomski* case.

{¶21} In *Suchomski*, the Court compared the domestic violence offense in R.C. 2919.25(A) (knowingly causing or attempting to cause physical harm to a family or household member) with R.C. 2919.22(B)(3) (defining a type of child endangering where corporal punishment was excessive under the circumstances and created a substantial risk of serious physical harm to the child). The Court was asked to determine if the statutes conflicted with each other and with the parent's right to reasonably discipline his child because R.C. 2919.25(A) does not require serious physical harm or specifically allow for reasonable parental discipline. *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991). The case was a state's appeal after an indictment was dismissed due to the claimed invalidity of the elements in division (A) of the domestic violence statute when applied to a parent. In reversing the dismissal of the indictment, the Supreme Court explained:

> "Nothing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child." The only prohibition is that a parent may not cause "physical harm" as that term is defined in R.C. 2901.01(C). "Physical harm" is defined as "any injury[.]" "Injury" is defined in Black's Law Dictionary (6 Ed.1990) 785, as "* * * [t]he invasion of any *legally protected interest* of another." (Emphasis added.) A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline.

19

*Id.* Contrary to Appellant's contention, the Supreme Court did not expressly add an element to the statute. Rather, the Court provided a definition of an element.

{¶22} While applying *Suchomski*, this district pointed out that after providing the definition of injury, the Supreme Court reviewed the defendant's alleged conduct against the definition and concluded the alleged conduct was sufficient to meet the elements of a domestic violence charge under R.C. 2919.25(A). *State v. Rosa*, 7th Dist., 2013-Ohio-5867, 6 N.E.3d 57, ¶ 25. This court concluded that unreasonable parental discipline is a component of the physical harm element of a domestic violence charge pursuant to R.C. 2919.25(A) and thus the state had the burden to provide sufficient evidence of unreasonable parental discipline.

{¶23} Initially, we must point out that *Suchomski* and *Rosa* only purported to apply when a parent is alleged to have caused "physical harm" to his or her child, such as in division (A) of the domestic violence statute. Contrary to Appellant's suggestion, the same concerns are not involved in a charge of child endangering through "abuse" of a child. The element of abuse is not a part of the domestic violence statute. Abuse is defined differently than the element of causing a physical injury (for domestic violence); abuse is more than an injury. For instance, the trial court instructed the jury that any physical or mental injury considered under the abuse element must harm or threaten to harm the child's health or welfare. (

{¶24} We also note Appellant was convicted of the additional element existing where the abuse caused serious physical harm. In *Suchomski*, the defense seemingly admitted the law will not categorize parental discipline as reasonable where it results in serious physical harm to the child.

{¶25} Serious physical harm includes: any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; any physical harm that carries a substantial risk of death; any physical harm that involves some permanent disfigurement; any physical harm that involves some temporary, serious disfigurement; any physical harm that involves some permanent incapacity, whether partial or total; any physical harm that involves some temporary, substantial incapacity; any physical harm that involves acute pain of such duration as to result in substantial suffering; and any physical harm that involves any degree of prolonged or intractable pain. The jury was instructed accordingly.

{¶26} The state presented a plethora of evidence showing the four-year-old child suffered serious physical harm as manifested in permanent scars across the back of the body from being whipped, a burn which caused a large scar on the arm, and the existence of broken arm bones and ribs. A reasonable person could easily conclude the child experienced "acute pain" of such duration as to result in "substantial suffering" and/or the harm involved a "degree of prolonged or intractable pain" from the injuries involved. The child suffered "temporary, serious disfigurement" and also "some permanent disfigurement." Moreover, a rational juror could find the child suffered a "temporary, substantial incapacity."

{¶27} We conclude the cases of *Suchomski* and *Rosa* are not directly pertinent to the child endangering convictions. Even if *Rosa* extends to the child endangering offense's elements of abuse causing serious physical harm, there was clearly sufficient evidence presented that the abuse causing the serious physical harm suffered by the child was not the result of reasonable parental discipline, as further reviewed infra.

{¶28} As to Appellant's use of this court's *Rosa* precedent to challenge his domestic violence conviction, the state cites cases from other districts holding reasonable parental discipline is an affirmative defense that was not raised in this case below. In *Rosa*, this court recognized the split in appellate districts, recited the districts on each side of the issue, and rejected the cases holding reasonable parental discipline was an affirmative defense that the defendant must prove.

{¶29} Even assuming it would be advisable to overturn our *Rosa* holding (as implicitly suggested by the state) and thereby label reasonable parental discipline as an affirmative defense, there is no need to do so at this time in this particular case as the record contains sufficient evidence of unreasonable parental discipline. In evaluating the reasonableness of parental discipline, the totality of the circumstances are to be considered, including factors such as: the age of the child; the child's behavior leading up to the discipline; the child's response to prior non-corporal punishment; the location of the injury; the severity of the punishment; and the parent's state of mind while administering the punishment. Circumstantial evidence inherently possesses the same probative value as direct evidence.

{¶30} The child was merely four years old. He was considered a well-behaved child. His mother did not spank him, and he suffered no injuries in life until meeting his father. The child's injuries were in varied locations and were not fleeting or superficial. Marks remained all over the child weeks after Appellant was informed by CSB of the allegations. It is not reasonable to make lasting marks on a child. Considering the enduring evidence of wounds and the medical testimony, the "punishment" was severe. Taking into account the injuries and the child's age, the perpetrator's state of mind can be considered unreasonable.

{¶31} As aforementioned in discussing the serious nature of the physical harm, it was not reasonable to whip one's four-year-old unclothed child with a doubled-up cord so hard that lash marks caused scarring in multiple lines across the child's body. The same can be said of an act that caused three rib fractures on opposite sides of the body and a broken arm at the elbow (with fractures to both the end of the bone of the upper arm and the end of a bone in the lower arm). Obviously, putting a child in scalding hot water cannot be viewed as reasonable parental discipline.

{¶32} Viewing the evidence and the available rational inferences in the light most favorable to the prosecution as is required in a sufficiency review, a rational juror could conclude the conduct at issue was not within the realm of reasonable parental discipline. In sum, there was sufficient evidence of child abuse resulting in serious physical harm and sufficient evidence of domestic violence even when placing the burden on the state to show any parental discipline was unreasonable.

{¶33} On the issue of jury instructions, Appellant argues the trial court should have instructed the jury that the definition of physical harm does not include an injury caused by conduct qualifying as reasonable parental discipline. However, the defense did not ask for a jury instruction on this topic. The trial court noted on the record that the defense did not object to the court's jury instructions.

{¶34} "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "Absent plain error, the failure to object to improprieties in jury instructions, as required by Crim.R. 30, is a waiver of the issue on appeal." *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983).

{¶35} "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To recognize plain error, the appellate court must find an obvious error which prejudiced the appellant by affecting his substantial rights; this involves a required finding that there is a "reasonable probability that the error resulted in prejudice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Nevertheless, an appellate court's invocation of plain error is discretionary. *Rogers*, 143 Ohio St.3d 385, 38 N.E.3d 860 at ¶ 23; Crim.R. 52(B).

{¶36} Notably, the opening statement for the defense admitted the child's injuries, noted the jury would hear disturbing information that would tug at their hearts, asked them to judge the mother's credibility when she placed the blame on Appellant, and anticipated the evidence would not show Appellant was the person who hurt the child. In closing, defense counsel declared: "I'm not here to minimize his injuries because [he's] gone through horrible injuries, but Wesley Triplett is not the perpetrator of those injuries, and the state's not proven that." He went on to review the mother's actions and inactions regarding the child, and the state's failure to suspect anyone but Appellant. Counsel recognized the impact of the photographs and acknowledged the child "has got some horrible injuries and he endured some horrible things, but the state's not proven anything against Mr. Triplett." Besides refraining from seeking a jury instruction on reasonable parental discipline, defense counsel was essentially conceding any discipline which caused the injuries described was not reasonable.

{¶37} We hereby conclude the alleged jury instruction issue in this case does not present extraordinary circumstances and there is no indication of a manifest miscarriage of justice. As set forth above, there was adequate evidence demonstrating the child's injuries were not the result of reasonable parental discipline. Considering all of the evidence and the arguments made by the defense, there was no prejudice

from the lack of an instruction defining physical harm as excluding reasonable parental discipline. As there was no prejudice, there was neither plain error nor ineffective assistance of counsel.

{¶38} In addition to a lack of prejudice under the circumstances of this case, the failure to request a jury instruction can be considered reasonable trial strategy. Here, counsel even expressly disclosed the defense strategy of not contesting the severity of the child's injuries. There is a strong presumption counsel strategy fell within the wide range of reasonable professional assistance, and we generally refrain from second-guessing these types of strategic decisions.

{¶39} The trial tactic was to refrain from downplaying the injuries or the conduct that caused those injuries and to direct the blame to the child's mother or someone other than Appellant. Strategically, counsel hoped to avoid inflaming emotions by arguing the conduct which caused the injuries was reasonably undertaken by a parent who was disciplining a four-year-old. Counsel's strategy was not unreasonable, especially considering the mother's admitted lack of concern regarding abuse even after seeing the horrific whip marks and her subsequent failure to seek medical attention for the child's large burn or multiple broken bones.

{¶40} "When the decision not to request a particular jury instruction may be deemed to be part of a reasonable trial strategy, we will not find plain error." *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 27. As the state presented sufficient evidence and the trial court did not commit plain error by failing to provide a jury instruction on reasonable parental discipline, Appellant's first assignment of error is overruled.

(ECF #9-1, PageID 214-21 (internal citations omitted); *see also Triplett,* 2018 WL 6930504

at *3-8).

The Fourteenth Amendment's Due Process Clause requires a state to prove every element

of a crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 315-16 (1979). On habeas

review, a federal district court must determine "whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Id.* at 319. The Supreme Court further teaches that "the

*Jackson* inquiry does not focus on whether the trier of fact made a correct guilt or innocence

determination, but rather whether it made a rational decision to convict or acquit." *Herrera v.*

*Collins,* 506 U.S. 390, 402 (1993). Claims based on the sufficiency of the evidence are assessed

23

with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, at 324 n. 16. The reviewing district court gives deference to the trier-of-fact's verdict and to the state court's consideration of the trier-of-fact's verdict. *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011).

Mr. Triplett asserts the trial court should have instructed the jurors that to find him guilty the jury would have to find that his actions were "outside the realm of reasonable parental discipline." (ECF #1-1, PageID 27). But the Seventh District identified the elements of domestic violence (knowingly cause or attempt to cause physical harm to a family or household member) and child endangering (reckless abuse of a child resulting in serious physical harm), and noted the jury was instructed on the definition of "serious physical harm." The Seventh District analyzed *State v. Suchomski* and *State v. Rosa* and concluded the state's burden to prove the parental discipline was unreasonable only applies when a parent is alleged to have caused "physical harm" to his child (as in the division A of Ohio's domestic violence statute), and not in the child endangering context where abuse results in "serious physical harm." A state court's interpretation of state law is binding on a federal court sitting in habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991).

At trial, the evidence showed the child suffered from serious physical harm, including permanent scars across the back of the body from being whipped with a looped cord, a burn causing a large scar on his arm, three fractured ribs, and two broken bones at the elbow, which satisfies the "serious physical harm" component of the child endangering counts. As to the domestic violence count, the evidence shows that the actions necessary to inflict those injuries on the child were not within the realm of reasonable parental discipline. As such, the Seventh District

24

appropriately concluded that sufficient evidence supported a finding of guilt as to both domestic violence and child endangering. This decision constitutes a reasonable application of the *Jackson* standard and Mr. Triplett has not shown by clear and convincing evidence that any of the state court's factual determinations were objectively unreasonable considering the evidence presented at trial.

I recommend the district court deny the sufficiency of the evidence claim in Ground One as meritless.

## III.  Ground Two

As to his conviction for domestic violence, Mr. Triplett makes another sufficiency of the evidence challenging, claiming "the State failed to prove a familial relationship between [Mr.] Triplett and [the child]." (ECF #1-1, PageID 29). He states the evidence establishing parentage consisted only of the child's mother's testimony that he was the father, evidence that was "sparse at best, and insufficient to form the basis of a conviction." (*Id.*)

The Seventh District addressed this claim as follows:

{¶42} The domestic violence statute states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A). The domestic violence statute defines a family or household member as:

(a) *Any of the following who is residing or has resided with the offender*:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, *or a child of the offender*, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(Emphasis added). R.C. 2919.25(F)(1).

25

{¶43} As the other definitions were not pertinent to the facts in this case, the trial court only instructed the jury, under R.C 2919.25(F)(1)(a)(ii), that a family or household member means "a person who is residing or has at some time resided with the defendant and who is a child of the defendant." (Tr. 280). (For instance, there was no evidence Appellant was ever married to the child's mother or lived with her as a spouse.)

{¶44} Appellant contests the sufficiency of the evidence to show the child was his family member or household member, claiming there was insufficient evidence of paternity. He cites a portion of the mother's testimony where she states that upon discussing his paternity of her child when she was pregnant, Appellant "claimed he didn't know." He states there was no evidence of: an acknowledgment of paternity, his name on the birth certificate, a child support obligation, or a DNA test. He cites the Sixth District's *Crawford* case where a woman had a child while married, her husband's name was on the child's birth certificate, and another man was charged with domestic violence for acts against the mother. In *Crawford*, the trial court granted the defendant's motion in limine to prevent the state from presenting testimony from the mother that she believed he was the child's father in order to show the mother qualified as the defendant's family or household member via R.C. 2919.25(F)(1)(b), i.e., she was the natural parent of a child of whom the defendant was the other natural parent "or the putative other natural parent."

{¶45} The Sixth District affirmed, relying on a statutory presumption of paternity for children born during marriage. *State v. Crawford*, 6th Dist. No. F-06-017, 2007-Ohio-2254, 2007 WL 1378390, ¶ 8, citing R.C. 3111.03(B) ("A presumption that arises under this section can only be rebutted by clear and convincing evidence that includes the results of genetic testing."). The court ruled: "Without DNA testing, the state cannot overcome the presumption created by R.C. 3111.03 and appellee's status as a "family member" could not be proven beyond a reasonable doubt." It was concluded: "since [the mother's] husband is the undisputed natural father, [the defendant] cannot be a 'putative' natural father." The court opined: "With the certainty and accuracy that DNA testing provides, mere testimony by the mother that appellee could be the father is simply inadmissible in this case."

{¶46} Contrary to Appellant's contention, the Sixth District's *Crawford* case is not similar to his case as: the statutory meaning of "putative other parent" is not at issue; there is no indication the mother was married to another person when the subject child was born; and there is thus no need to resort to language about DNA in a separate statute which provides a presumption of paternity during marriage. Also, as discussed further infra, Appellant made verbal acknowledgments of his parental status at the time of the investigation.

{¶47} The Fifth District considered the sufficiency of the evidence on the alleged father-son relationship between a victim and an offender. On this element, the victim of domestic violence testified the defendant was his son. The court stated: "we are unpersuaded that the State must produce formal documentation of civil paternity

establishment in order to meet the 'family member' element in father/child criminal domestic violence prosecutions. Instead, the State can utilize testimonial evidence going to the issue of paternity, subject to a credibility determination by the jurors or the finder of fact."

{¶48} Here, the mother testified she and Appellant were friends who had a brief sexual relationship that resulted in her pregnancy and the subject child's birth. She indicated Appellant contacted her in December 2016 in order to establish a relationship with his son. When asked about the continued visitation after she saw the child's injuries such as the whip marks, she responded she did not see a problem "when he first did it, no 'cause it still didn't trigger to me, okay, this man is – his own dad is abusing him."

{¶49} Furthermore, the caseworker explained she went to Appellant's residence to discuss a report of abuse against the subject child, noting she complied with her duty to disclose to Appellant the content of the allegations in the referral. She testified Appellant replied "by stating that he did not harm his child, that his child had no injuries to him, that his child had no bruises." He also told the caseworker his son was not present at the time and provided the mother's first name.

{¶50} The caseworker also testified to contacting the Child Support Enforcement Agency to see if paternity had been established and learned Appellant was listed as the child's father. Related to the topic of child support, we note the mother testified that Appellant wondered if (or doubted that) he had medical coverage for the child. The four-year-old child believed Appellant was his father as he explained his injuries by stating his father struck his back with a cord and burned him (and Appellant admitted to the mother that he caused the marks on the child's back when he "whooped" him and caused the child's burn).

{¶51} Finally, the second time the caseworker went to Appellant's residence to speak about the subject child, Appellant again denied "his son" was injured. Specifically, she quoted Appellant as declaring: "I promise you, Miss Patty, my son is fine. Theres no injuries on him."

{¶52} Considering all of the evidence in the light most favorable to the prosecution, a rational juror could conclude Appellant was the child's father. Most importantly, the mother indicated her pregnancy with the subject child was the result of her sexual relationship with Appellant, and Appellant held himself out (around the time of the abuse) as the child's father to the child and to others (including to the caseworker to whom Appellant essentially admitted he was the child's father). There was sufficient evidence that the victim was Appellant's child. This assignment of error is overruled.

(ECF #9-1, PageID 221-25 (internal citations omitted); *see also Triplett,* 2018 WL 6930504 at *8-

10).

Mr. Triplett has not demonstrated that the state court's determination is contrary to or an unreasonable application of Supreme Court precedent, nor has he demonstrated by clear and convincing evidence the state court's factual determinations are erroneous. First, the evidence establishing parentage is far more robust than Mr. Triplett acknowledges. Though he "questions" the claim of the child's mother that he is the father, evidence adduced at trial reveals Mr. Triplett held the child out as his son on multiple occasions when a caseworker came to his residence to investigate allegations of abuse, CSEA has Mr. Triplett listed as the child's father, and the child's mother testified Mr. Triplett expressed doubt that he had medical coverage for the child. Mr. Triplett has not attempted to rebut any of these factual determinations with clear and convincing evidence to the contrary. Considering this evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Mr. Triplett was the child's father.

I recommend the district court deny Ground Two on the merits.

## IV.  Ground Four

In Ground Four, Mr. Triplett claims trial counsel was ineffective for failing to object to trial testimony and the State's subsequent argument as to reasonable parental discipline when such argument was violative of Ohio legal standards and was based on a medical standard. (ECF #1, PageID 3).

*Strickland* establishes a two-part test to determine whether a defendant was denied effective assistance of counsel:

> First, defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This

28

requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial who result is reliable.

466 U.S. at 687.

To satisfy the deficiency prong, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 668. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

This is an extremely deferential standard, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91. Moreover, this inquiry requires eliminating "the distorting effects of hindsight ... [in order] to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Id.* at 687.

29

The Seventh District addressed Mr. Triplett' due process and fair trial claim relating to the nurse's testimony and his related ineffective assistance of counsel claim, Grounds Three and Four respectively, on direct appeal, writing as follows:

{¶54} The nurse practitioner testified to a reasonable degree of medical certainty that the injuries suffered by the child represent physical abuse. She answered in the affirmative when asked whether it was her opinion that the injuries exceeded the bounds of appropriate physical parental discipline. This was after the state asked about standards set forth by the American Academy of Pediatrics, to which she answered:

> So according to the American Academy of Pediatrics, appropriate physical discipline might include striking a child with the hand on the clothed buttocks, but it should not leave a mark longer than a few moments. So if a child was physically disciplined and they have marks that are persistent more than a few moments, then that child is physically abused.

In closing, the state described the child's injuries as "beyond the tolerated standards for corporal punishment" and referred to the nurse practitioner's testimony "about what the American Pediatric Society has recommended, that it should be a spanking, bare hand against clothed skin."

{¶55} Appellant protests the nurse's quoted testimony and the state's recap of that testimony as manifesting the adoption of a more stringent standard than the law in this state. He cites to the reasonable parental discipline standard in the aforementioned *Rosa* case.

{¶56} However, no objection was lodged to the nurse's testimony that this standard set forth by the American Academy of Pediatrics was the source of her medical opinion or to the state's closing argument. Consequently, Appellant raises plain error and contends it was ineffective assistance of counsel to refrain from objecting to the nurse's testimony and the state's closing argument.

{¶57} Initially, we note the nurse practitioner said a bare hand on a clothed child was an example of appropriate parental discipline; she did not state it was the only appropriate physical discipline. In a recent case, we found no plain error where a physician testified that a child's injury was the result of unreasonable physical discipline and explained the American Academy of Pediatrics states physical discipline should be hand-to-buttocks contact that does not leave marks persisting for more than 5 to 10 minutes.

{¶58} As set forth supra, the defense strategy was to avoid minimizing the child's injuries or the actions of the person who caused the injuries. The defense wished to deflect the blame to the mother (or someone she was protecting). Agreeing that the conduct which caused the injuries would not fall under the realm of reasonable

30

parental discipline falls into this strategy, as would refraining from contesting testimony about what the American Academy of Pediatrics recommends. We shall not second-guess this tactical decision.

{¶59} Where there is no deficiency, prejudice need not be considered on an ineffective assistance of counsel claim. Furthermore, where a failure to object can be considered tactical, a reviewing court need not find plain error.

{¶60} In addition, plain error is a discretionary doctrine under Crim.R. 52(B), and this matter does not result in an extraordinary situation involving manifest miscarriage of justice. Finally, prejudice has not been demonstrated in any event, as the injuries at issue were established by overwhelming evidence to lie outside the bounds of reasonable parental discipline. These assignments of error are overruled.

(ECF #9-1, PageID 225-27 (internal citations omitted); *see also Triplett*, 2018 WL 6930504

at *10-12) (internal citations omitted).

The Seventh District determined, based on defense counsel's opening statement and closing argument (*see* ECF #9-1, PageID 220; *see also Triplett*, 2018 WL 6930504 at *7), that the defense trial strategy was to deflect blame for the child's injuries to someone else, possibly the child's mother. This was ultimately a reasonable trial strategy given the mother's admitted lack of concern regarding the abuse even after seeing whip marks on the child and her subsequent failure to seek medical attention for the burn or broken bones.

The trial transcript reflects that defense counsel's opening statement acknowledged the child's injuries but encouraged the jurors to judge the mother's credibility and anticipated the evidence would not support the State's contention that it was Mr. Triplett who abused the child. (ECF #10-3 at PageID 444-45). In the opening statement to the jury, defense counsel made clear Mr. Triplett did not dispute the child was injured but claimed the evidence would not establish that Mr. Triplett inflicted the injuries. (ECF #10-3 at PageID 446). In closing argument, defense counsel again argued that Mr. Triplett did not inflict the injuries the child sustained. (*Id.* at PageID 615) ("I'm not here to minimize his injuries because [the child's] gone through horrible injuries,

31

but Wesley Triplett is not the perpetrator of those injuries, and the state's not proven that."). Objecting to the nurse's testimony about what the American Academy of Pediatricians considers appropriate physical discipline of a child, spanking a child's clothed buttocks that does not leave persistent marks, especially after admitting the child suffered "horrible injuries," could reasonably undercut this trial strategy.

Where the defendant fails to overcome the presumption that the challenged conduct might be considered sound trial strategy, courts will not find ineffective assistance. *Strickland*, 466 U.S. at 689. Judicial scrutiny of counsel's performance is highly deferential. Mr. Triplett has not established that trial counsel's performance was constitutionally deficient because the failure to object is reasonably considered sound trial strategy, and therefore cannot meet the *Strickland* standard. The Seventh District's decision on the issue is not an unreasonable application of the *Strickland* standard, nor is the decision based on an unreasonable determination of facts.

I recommend the district court deny his fourth ground for relief on the merits.

## V.     Ground Six

In Ground Six, Mr. Triplett asserts the carbon copy indictments for child endangering were insufficiently vague and lacked specificity, leading to the possibility that Mr. Triplett was punished multiple times for the same offense or may be precluded from pleading his convictions as a bar to future prosecution, issues pertaining to double jeopardy.

As an initial matter, to the extent Mr. Triplett challenges the manner in which he was charged, his claim does not trigger federal constitutional concerns subject to review in federal habeas proceedings. It is well-settled that there is not a federal constitutional right to an indictment in state criminal proceedings. *Hurtado v. California*, 110 U.S. 516, 537-38 (1884); *see*

32

*also Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states....It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some manner.") (internal citations omitted); *Watson v. Jago*, 558 F.2d 330, 337 (6th Cir. 1977); *Fears v. Miller*, No. 1:09cv698, 2009 WL 6315341, at *9 (N.D. Ohio Dec. 1, 2009), *report and recommendation adopted by* 2010 WL 1258096 (N.D. Ohio Mar. 30, 2010). A claim that an indictment did not conform to state or federal procedural requirements or did not contain certain information is not cognizable on federal habeas review except as a claim that the petitioner was denied fair notice. *See Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review"). If "sufficient notice of the charges is given in some...manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz*, 731 F.2d at 369; *Watson*, 558 F.2d at 338; *see also Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006). Fair notice has been given when "the offense is described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Koontz,* 731 F.2d at 369. Mr. Triplett's Ground Six is cognizable only to the extent that it sounds in notice.

The Seventh District addressed this issue as follows:

{¶74} Appellant quotes the Sixth Amendment to the United States Constitution as follows: "In all criminal prosecutions, the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation." He also quotes the following from Article I, Section 10 of the Ohio Constitution: "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." This guarantees the essential facts constituting the offense to be tried will be found in the indictment issued by the grand jury.

33

{¶75} In discussing due process, Appellant raises the related concept of double jeopardy, stating the notice of the charge assists a defendant in avoiding future double jeopardy issues. Article I, Section 10 of the Ohio Constitution states: "No person shall be twice put in jeopardy for the same offense." *See also* Fifth Amendment to the U.S. Const. (no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"). The double jeopardy clause prohibits re-prosecution for the same offense after a conviction (or an acquittal) and prohibits multiple punishments for the same offense. Appellant points out a constitutionally-valid indictment must contain the elements of the offense charged, fairly inform him of the charge against which he must defend, and enable him to plead an acquittal or conviction to bar any future prosecution for the same offense.

{¶76} An indictment is sufficient if it "contains a statement that the defendant has committed a public offense" which may be "in ordinary and concise language" and in the words of the applicable section of the statute, "provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." An indictment can be amended "at any time" by the court if it does not alter the name or identity of the offense.

{¶77} An indictment is not made invalid for stating the time imperfectly, and a date is not required to be changed unless it is an element. There is no issue with the provision of a date range, especially when the victim is a young child abused by a parent.

{¶78} Appellant asserts that of the three child endangering counts, only a single verdict of child endangering can stand, claiming the offenses are not distinguished in the indictment or the bill of particulars. In contending "carbon copy" charging of multiple child endangering allegations violated his rights to due process or double jeopardy, Appellant relies on the Sixth Circuit's *Valentine* case.

{¶79} In *Valentine*, the defendant was convicted in Ohio of 20 counts of child rape and 20 counts of felonious sexual penetration of a minor for abusing his eight-year-old step-daughter. The victim testified Valentine forced her to perform fellatio in the living room on "about twenty" occasions, digitally penetrated her vagina in the living room on "about fifteen" occasions, engaged in similar incidents in three different bedrooms, and anally penetrated her with his penis on "about ten" occasions. She apparently altered her numbers on cross-examination. The Eighth District found insufficient evidence for five of the felonious sexual penetration counts.

{¶80} The defendant then filed a federal petition for a writ of habeas corpus arguing his due process rights were violated when he was convicted on an indictment which did not specify a date or distinguish the counts by conduct, and the trial court for the Northern District of Ohio granted the writ of habeas corpus as to all charges. In the state's appeal, the Sixth Circuit allowed two convictions to stand, one in each category. Although the appellate court found no issue with the lack of specificity on dates and the use of a date range in the case involving a child victim of sexual abuse,

the court found a problem with the lack of factual distinctions within each set of 20 counts. *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir.2005).

{¶81} The *Valentine* court essentially held the prosecution was required to specifically lay out a separate factual basis for each count and could not rely on the victim outlining the "typical" molestation she suffered or her estimate on the number of incidents. The court opined: "Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own." The court said the jury could have found him guilty of some counts within the block but others, but the court then admitted the jury could have acquitted him of some of the counts if they believed the child overestimated the number of incidents. The court surmised the defendant had little ability to defend himself because each count was not "anchored" to a "distinguishable" offense. "The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced." Yet the court also said the state could have cured any due process problems by delineating the factual basis for each count at trial.

{¶82} The *Valentine* court also found double jeopardy problems. For instance, the court concluded the lack of specificity in the indictment or in the trial record precluded Valentine from pleading his convictions as a bar to future prosecutions; the court also entertained the possibility he was subject to double jeopardy in his initial trial by being punished multiple times for the same offense. The court believed: "As the charges were not linked to differentiated incidents, there is resulting uncertainty as to what the trial jury actually found. * * * When prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy." The court also expressed concern as to jury unanimity as to the underlying factual basis for each offense, but still upheld one conviction from each block of counts.

{¶83} As we recently stated in *Miller*, this court does not follow *Valentine*. *State v. Miller*, 7th Dist., 2018-Ohio-3430, --- N.E.3d ----, ¶ 30 . . . . This type of argument would improperly protect a defendant who committed multiple instances of the same offense against a child in his care. Contrary to the *Valentine* majority's claim, there is no indication the jury would believe its finding of guilt on one count of child endangering would require a conviction on another count of child endangering merely because it contained the same elements and the same date range. Furthermore, the Sixth Circuit does not rely on *Valentine* as precedent.

{¶84} The case at bar is also distinguishable from *Valentine* as it does not involve an estimated total and the trial record contains physical evidence of distinct injuries supporting each of the three child endangering counts. The trial testimony of the mother reviews how she learned of three different incidents from the father on three different occasions while the child was staying at the father's residence. The physical evidence confirmed this. As such, trial testimony and evidence delineated distinct,

35

separate occurrences coinciding with separate counts of child endangering. And, the bill of particulars alleged different incidents of child abuse.

{¶85} "There is no inherent defect in an indictment that charges a defendant with repetition of the same crime over a defined period of time." The indictment need not demonstrate the underlying facts that are not elements as this is the function of the bill of particulars. The state provided a bill of particulars here disclosing the allegations that Appellant: struck the child with a cord-like object causing injuries and scarring to the back and buttocks; burned the child's arm with water in the bathtub; and caused fractures to the child's ribs and arm. The bill of particulars noted Appellant did not seek medical attention for any of the child's injuries, claimed the injuries were in various stages of healing, and said this indicated Appellant injured the child on multiple occasions while he was staying at Appellant's residence.

{¶86} Finally, as quoted under the prior assignment of error, the trial court instructed the jury that each count of child endangering was a separate matter even though the language charging each count was identical. For all of the foregoing reasons, we overrule Appellant's argument that his due process and double jeopardy rights were violated where the indictment did not specifically delineate the conduct relevant to each of the three child endangering counts. This assignment of error is overruled.

(ECF #9-1, PageID 231-35 (internal citations omitted); *see also Triplett*, 2018 WL 6930504 at *14-17).

Mr. Triplett has not cited any Supreme Court precedent holding that he has a federal constitutional right to an indictment in state court proceedings, and, as noted above, it is well settled that the federal constitution does not require any indictment rule, or indeed, any indictment at all, so long as the defendant receives sufficient notice of the charges in some manner. *See Koontz*, 731 F.2d at 369. Nor has Mr. Triplett attempted to rebut the state court's factual determinations by clear and convincing evidence.

Here, the Seventh District determined Mr. Triplett received a bill of particulars that delineated three separate types of injuries (scarring from whip marks, burn on the arm from scalding water, and fractures to the child's ribs and elbow) and that the injuries were in various stages of healing, indicating the child was injured on three separate occasions. This is not a denial

of due process; the bill of particulars constitutes fair notice such that Mr. Triplett could adequately prepare a defense to the charges.

I recommend the district court deny Ground Six on the merits.

## VI.     Ground Seven

Mr. Triplett next claims admission of the child-victim's statements through the testimony of a treating nurse practitioner who heard the child's statements violates the Ohio Rules of Evidence and his constitutional right to confront adverse witnesses. As a general matter, "errors in the application of state law, especially with regard to admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir.), *cert denied*, 464 U.S. 962 (1983). However, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This is a narrow exception and requires that an alleged violation meet a rigorous standard: "[g]enerally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Mr. Triplett asserts the admission of the child's statements deprived him of a fair trial. In rejecting the challenge to the trial court's evidentiary ruling, the Seventh Circuit articulated:

> {¶88} There is a hearsay exception for "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Evid.R. 803(4). Utilizing this rule, the state filed a motion in limine seeking a pretrial ruling on the admissibility of the child's statements while being treated at the hospital, including the examination and treatment by the Child Advocacy Center of the Akron Children's Hospital.

{¶89} At a hearing on the motion in limine, it was noted that law enforcement had not spoken to the child prior to this visit. It was explained that the nurse practitioner listened while a hospital social worker interviewed the child so the nurse practitioner could be prepared to perform the medical examination of the child; this technique was standard hospital protocol used to put the child at ease in order to gather information for the medical evaluation, diagnosis, and treatment. It was considered unlikely the four-year-old child was speaking with intent to provide information for a future prosecution. The court granted the state's motion in limine to allow the nurse practitioner to testify to the child's statements which were provided for medical diagnosis and treatment.

{¶90} At trial, the nurse practitioner explained how a patient's statement as to how the injuries were sustained was an important part of the medical history which she relied upon for a diagnosis and treatment. She spoke of non-leading interview techniques used by hospital social workers when speaking to child-victims. She explained that she observed the interview in real-time through a one-way mirror. She then testified to the child's disclosure that his father burned his arm with water in the bathtub and would strike him with a cord on his unclothed back. Defense counsel's objection to this testimony was overruled.

{¶91} If a hearsay statement being considered for admission is testimonial, then it is subject to the confrontation clause. If hearsay is non-testimonial, its admissibility is left to the Rules of Evidence, and it is not subject to the confrontation clause. The same test applies to evaluate statements regardless of the status of the recipient of the statement as a law enforcement agent or a person other than law enforcement; although, the statements to non-law enforcement agents are much less likely to be considered testimonial. Specifically, a statement cannot fall within the confrontation clause unless its primary purpose was testimonial.

{¶92} Appellant contends the child's statements to the nurse practitioner were testimonial and therefore inadmissible under the Confrontation Clause. He claims the child's statements, which the nurse practitioner relayed at trial, were testimonial because the primary purpose of the interview was a forensic investigation and there was no immediate medical emergency. He relies on the Ohio Supreme Court's *Arnold* case, which he believes is a case on point. The state points out the *Arnold* case made two holdings due to the different categories of statements in that case, and the second holding supports the state's response to this assignment of error.

{¶93} In *Arnold*, the Ohio Supreme Court concluded that the statements of a child during an interview at a child advocacy center had dual characteristics: the interview by the hospital's social worker while the nurse practitioner watched was both a forensic investigation with a purpose of collecting evidence for the police for future prosecution and an intake interview with a purpose of eliciting a medical history necessary for the medical examination, diagnosis, or treatment. The Court found some of the child's statements were testimonial and inadmissible; for certain statements the social worker was acting akin to an agent of the police with a primary

38

purpose of eliciting certain statements in order to investigate for future prosecution (and not to meet an ongoing emergency as the child had already been released from the hospital). The Court thus excluded certain statements of the child, such as that the defendant locked the bedroom door before raping her, the location of her mother at the time, and what the defendant's penis looked like.

{¶94} However, the Supreme Court ruled that other statements made during the same interview were not testimonial as they transmitted information necessary to diagnose and medically treat the child. The Court concluded:

> [The child's] statements that described the acts that Arnold performed, including that Arnold touched her "pee-pee," that Arnold's "pee-pee" went inside her "pee-pee," that Arnold's "pee-pee" touched her "butt," that Arnold's hand touched her "pee-pee," and that Arnold's mouth touched her "pee-pee," were thus necessary for the proper medical diagnosis and treatment of [the child].

The Court found a follow-up examination still involves medical diagnosis and treatment and observed how the nurse practitioner relies on the information she hears during the interview by the social worker to perform her medical duties and will not necessarily ask the child questions concerning medical history during the examination..

{¶95} In allowing the nurse practitioner to testify to the child's statements about the actionable conduct perpetrated upon the child's body by the defendant, the Court characterized the social worker as an agent of the nurse practitioner when asking certain questions for the purpose of medical diagnosis and treatment. The "dual capacity" role of a hospital social worker does not destroy the status of the statements elicited for the purpose of medical diagnosis and treatment, and "the same interview or interrogation might produce both testimonial and nontestimonial statements." Consequently, "[s]tatements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause."

{¶96} We accordingly conclude the objected-to testimony of the nurse practitioner was not testimonial. Her testimony that the child disclosed his father would strike him with a cord on his unclothed back causing pain, and his father burned his arm with water in the bathtub concerned statements of the child made for the purpose of medical diagnosis and treatment. The nurse practitioner was preparing to examine the child's lash-marked body, burnt elbow, and broken bones as a part of the child's follow-up and treatment. Pursuant to the Supreme Court's *Arnold* case, the fact that the hospital visit was a follow-up or that the interviewer could be seen as having a dual capacity does not detract from the primary purpose of eliciting this particular information: to gather a medical history, including the cause of the injuries being evaluated, for diagnosis and/or treatment.

{¶97} In other words, the mere fact that the child was previously examined in an emergency room does not mean subsequent medical examinations of a child are not conducted for the purpose of medical diagnosis or treatment. A prior diagnosis by an emergency room physician does not necessarily mean every possible medical diagnosis corresponding to the child's condition was discovered. In fact, psychological injuries are frequently addressed later. As for treatment, it is common knowledge that emergency room physicians advise patients to follow-up with a general physician (and sometimes also with specialists). In addition, the ultimate issuance of a prescribed treatment regime is not the test. The monitoring of healing progress and the determination of whether further treatment is warranted cannot be made without the medical examination. Statements made for the purpose of medical diagnosis or treatment do not lose their status as such if the practitioner does not testify to prescribing a regime of new or further treatment. In accordance, this argument is overruled.

{¶98} Appellant also suggests the nurse practitioner infringed on the jury's fact-finding function, pointing out a witness cannot give an opinion on the veracity of a child and base a medical diagnosis solely on the child's narrative, citing *State v. Schewirey*, 7th Dist. No. 05 MA 155, 2006-Ohio-7054, 2006 WL 3849292, citing *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). On this topic, a medical expert can conclude a particular child is the victim of abuse under Evid.R. 702. However, the admission of an expert opinion on the veracity of a child is improper.

{¶99} In *Schewirey*, this court found a physician should not have been permitted to testify to his opinion that the child was a victim of sexual abuse where his opinion was based solely on the child's narrative as this was essentially an opinion on the child's credibility. This court recognized: "However, an expert does not need physical findings to reach a diagnosis. If the expert relies on other facts in addition to the child's statements, then the expert's opinion will not be an improper statement on the child's veracity."

{¶100} Here, the nurse practitioner testified as to her diagnosis that the child's injuries represented child physical abuse and held this opinion to a reasonable degree of medical certainty. No objection was entered to this testimony. This testimony was relevant under Evid.R. 402 and had a probative value which was not substantially outweighed by any considerations in Evid.R. 403 (such as unfair prejudice, confusion, or the issues of misleading of the jury). Moreover, the nurse practitioner did not rely on merely the child's statement that his father would strike him with a cord as discipline or that his father burned him in the bathtub.

{¶101} She inspected the telling marks across this four-year-old child's body and the burn on his arm. Multiple looped whip marks were still clearly visible across the child's back, legs, and elsewhere and were believed to have resulted in permanent scarring. The burned elbow was prominent and permanent (and evinced no splash marks). The jury was presented with photographs of the scarring. The child also had multiple broken bones, including fractured arm bones and ribs on both sides of his

body. The nurse practitioner was permitted to consider the medical reports on these conditions. This is not akin to a case where the diagnosis is essentially a mere opinion that a child is credible. Accordingly, this argument is without merit, and this assignment of error is overruled.

(ECF #9-1, PageID 236-41 (internal citations omitted); *see also Triplett,* 2018 WL 6930504 at *17-20).

Thus, the Seventh District rejected Mr. Triplett's constitutional confrontation claim by concluding that circumstances demonstrated the child's statements to the hospital social worker, relayed at trial by the treating nurse practitioner, were made for the purpose of medical diagnosis or treatment and were therefore nontestimonial in nature.

In *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004), the Supreme Court articulated the broad principal that admission of "testimonial" statements of a witness who did not appear at trial offends the Confrontation Clause, which guarantees criminal defendants the right to physically confront and cross examine adverse witnesses, unless the defendant had a prior opportunity to cross examine the witness. The Supreme Court defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" and stated that "testimonial" applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. *Id.* at 51, 68.

In *Davis v. Washington,* 547 U.S. 813 (2006), the Supreme Court further explained:

Statements are nontestimonal when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. "In *Michigan v. Bryant,* 562 U.S. 344 (2011), the Supreme Court expounded on the primary purpose test and emphasized the inquiry "must consider all relevant circumstances." *Id.* at 369. The Court stated:

> [W]hen, as in *Davis,* the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause. But there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with the primary purpose of creating an out-of-court substitute for trial testimony.

*Id.* at 358. In *Ohio v. Clark*, 576 U.S. 237 (2015), the Supreme Court explained subsequent case law following *Crawford* that "labored to flesh out what it means for a statement to be testimonial" and stated, "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony." 576 U.S. at 244-45.

The Seventh District's denial of Mr. Triplett's confrontation claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was the decision based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding. In *Davis,* the statements found to be testimonial were only those in which "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis,* 547 U.S. at 822. Here, the Seventh District determined the child's statements were non-testimonial in nature because, in its view, the primary purpose of the conversation was to elicit information for the nurse practitioner to use in subsequent medical examination of the child. Therefore, the primary purpose was unrelated to creating evidence for prosecution, which renders the disputed statements non-testimonial. As noted, non-testimonial statements do not implicate the Sixth Amendment's Confrontation Clause.

I therefore recommend the district court find Ground Seven to be without merit.

## VII.    Ground Eight

In his last ground for relief, Mr. Triplett claims trial counsel was ineffective for failing to object to inadmissible hearsay testimony from Sergeant Smith. The Seventh District rejected this challenge on direct appeal:

{¶103} Appellant argues his trial attorney rendered ineffective assistance of counsel when he failed to object when the police officer testified about hearsay statements made by the child. Appellant asserts the statements do not qualify for a hearsay exception. The state responds by claiming the police officer did not testify as to a statement by the child but merely testified about what item the child identified.

{¶104} Although unaddressed by either side, we note the officer did testify that the warrant allowed him to search for a black cord because the investigation resulted in the child stating "he got hit with a black cord." Nevertheless, this statement was cumulative with no reasonable probability of affecting the outcome as the nurse practitioner was properly permitted to testify that the child said his father struck him with a cord and the mother testified Appellant admitted the marks were caused when he "whooped" the child.

{¶105} In any event, Appellant's brief focuses on the following testimony by the officer: (1) when he presented the child with three photographs of three black cords seized from Appellant's residence and asked him to select the photo of the cord used, the child picked photograph number three; and (2) when he thereafter laid the seized cords on the floor and asked him to select the one used, the child "[i]nstantly went right to the cord that was identified in photo number 3."

{¶106} Citing no law on the topic, the state suggests this is not hearsay, equating the situation to an officer testifying about the identification of a suspect during a line-up. However, testimony on the identification of a person during a line-up has its own rule. *See* Evid.R. 801(D)(1)(c) (a prior statement by a witness is not hearsay if the statement is one of identification of a person soon after perceiving the person where the circumstances demonstrate the reliability of the prior identification and if the declarant testifies at trial or hearing and is subject to cross-examination concerning the statement).

{¶107} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." The act of identifying the cord that was previously used as a weapon from an array of three cords upon being asked to do so by a police officer is nonverbal conduct intended as an assertion.

{¶108} However, counsel did not object to the officer's testimony. On cross-examination, counsel elicited that the officer did not have the cords tested for DNA or even for blood. Counsel's closing argument opined the failure to test for forensic evidence was part of the general failure to investigate any suspect other than Appellant. This could be seen as a tactical decision to allow evidence which could be used to show a lack of investigation in a case where the defense strategy was to blame the mother (or someone she was protecting) for the child's injuries and to further criticize the investigators for failing to suspect anyone but Appellant, even though his accuser was the mother who failed to bring the child for medical treatment upon seeing multiple injuries at various times (and who may have coached the child). Our scrutiny of this performance by counsel is highly deferential, and we conclude Appellant has not overcome the strong presumption the challenged action might be considered sound trial strategy.

{¶109} Moreover, the testimony on the child's identification of one of the three cords seized from Appellant's residence would not result in reversible prejudice where: there was testimony that Appellant admitted he "whooped" the child upon the mother's viewing of the child's wounds in Appellant's presence; there was testimony the child disclosed during a medical evaluation that his father would strike him with a cord; the nurse practitioner saw physical evidence the child was struck by a flexible cord-like object; the jury saw photographs showing the looped scars across the child's body which demonstrate that a cord-like object was repeatedly used to whip the child; and Appellant told the caseworker the child had no injuries on his body. This and other evidence established beyond a reasonable doubt that Appellant used a cord to injure the child. It cannot be said Appellant would not have been convicted but for the testimony challenged here. This assignment of error is overruled.

(ECF #9-1, PageID 241-43 (internal citations omitted); *see also Triplett,* 2018 WL 6930504 at *17-21).

The Seventh District applied the *Strickland* standard, discussed above, and determined, based on defense counsel's cross examination of the officer and statements in closing argument, that trial counsel's failure to object to testimony on the child's identification of the cords seized may represent reasonable trial strategy. The state appellate court's adjudication of this issue was not objectively unreasonable. On cross-examination, trial counsel actively elicited testimony that the officer had not tested the cord for evidence of DNA or blood and, in closing argument, argued the officer's failure to test for forensic evidence was part of the general failure to investigate anyone

other than Mr. Triplett. Applying *Strickland*, the Seventh District reasonably determined that not objecting to the hearsay testimony comported with the ultimate defense strategy to place the blame on another, possibly the child's mother. Allowing testimony that the child identified a cord seized from Mr. Triplett's residence gave defense counsel the opportunity to reveal that the cord was not tested for DNA or blood, raising doubt that the cord from Mr. Triplett's residence was ever used on the child.

Accordingly, I find that this falls within the range of acceptable trial strategy and recommend the district court deny Ground Eight as meritless.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would

succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Triplett has not made a substantial showing that his constitutional rights were violated. Reasonable jurists would not find this assessment of Mr. Triplett's claims debatable or wrong. A COA is thus unwarranted in this matter.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, I recommend Mr. Triplett's petition (ECF #1) be **DISMISSED.** I further recommend Mr. Triplett's request for an evidentiary hearing be denied. Finally, I recommend that Mr. Triplett not receive a certificate of appealability.

Dated: December 14, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

### Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation.** *Berkshire v. Dahl,* **928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object."** *Howard v. Sec'y of Health and Hum. Servs.,* **932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the**

exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).